**SIGNED THIS: October 03, 2005**

_____
**MARY P. GORMAN
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF ILLINOIS

| | |
|---|---|
| In Re ) | |
| ) | In Bankruptcy |
| JERALD EDWARD CLARK, ) | |
| ) | Case No. 04-74826 |
| Debtor. ) | |
| _____ ) | |
| ) | |
| LALIT SINHA and ) | |
| DAPHNE SINHA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Adversary No. 05-7009 |
| ) | |
| JERALD EDWARD CLARK, ) | |
| ) | |
| Defendant. ) | |

## O P I N I O N

This matter came before the Court on the Complaint to Determine Dischargeability of Debt filed by Plaintiffs, Lalit and

-1-

Daphne Sinha, and the handwritten answer thereto filed by Defendant, Jerald Edward Clark.  This adversary proceeding involves allegations of fraud and willful and malicious injury in connection with a residential remodeling agreement.  On July 12, 2005, the Sinhas filed a Motion for Summary Judgment, to which Mr. Clark filed a handwritten response on August 4, 2005.  The Court found that material questions of fact existed, and denied the Motion for Summary Judgment on August 24, 2005.  The matter was called for trial on September 22, 2005.  Mr. Clark failed to appear.

On August 14, 2002, the Sinhas and Mr. Clark entered into a contract whereby the parties agreed that Mr. Clark would undertake a remodeling project and the Sinha home at 2809 Brandywine Road, Springfield, Illinois.  The contract provided that the work would be done at a total cost to the Sinhas of $59,175.

In entering into the contract and paying money to Mr. Clark, the Sinhas relied on Mr. Clark's representations that he was an experienced contractor who was able to do the work promised.  Furthermore, in entering into the contract and paying money to Mr. Clark, the Sinhas relied on Mr. Clark's representations in his phone book ad that he was licensed and insured.  Mr. Clark's representations that he was able to do the job were false and Mr. Clark knew they were false at the time they were made.  Additionally, Mr. Clark was not licensed and did not have insurance.

Mr. Clark presented a certificate of insurance to the Sinhas which had been issued by an insurance agency which had been paid by Mr. Clark with a check drawn on a closed account. Mr. Clark knew the insurance certificate would be cancelled when the check to the agency was not paid. Mr. Clark's tender of the certificate of insurance to the Sinhas was an intentional misrepresentation by Mr. Clark.

When the Sinhas paid Mr. Clark on three separate occasions in a total sum of $20,000, the Sinhas relied on the representations made by Mr. Clark that the funds would be used in order to purchase custom materials for the remodel. Mr. Clark's representations that he was ordering custom materials were false and Mr. Clark knew they were false. Mr. Clark never ordered any custom material for the Sinha remodel project.

Although Mr. Clark did some construction work at the Sinha home, the work was done only to create the appearance that Mr. Clark was honoring his contractual obligations. Dennis Eldridge - the contractor hired by the Sinhas to complete the project after the termination of the contract with Mr. Clark - found that the work done by Mr. Clark clearly showed that Mr. Clark had no intention of completing the job. Mr. Eldridge found problems with the rafters, the chimney, and the framing, which indicated that Mr. Clark was just doing something to look like something was being done, but that Mr. Clark had actually "painted himself into a

corner". The work done would have actually impeded completion of the project by Mr. Clark if he had honestly intended to complete the project.

As indicated above, the Sinhas retained Mr. Eldridge to complete the remodeling project after terminating Mr. Clark. The total cost to correct the defects caused by Mr. Clark and to complete the remodeling was $73,772.59. Accordingly, the Sinhas paid $14,597.59 more for the remodeling than originally contemplated by the contract with Mr. Clark.

During the several years prior to entering into the contract with the Sinhas, Mr. Clark was the subject of numerous similar complaints by other consumers. On February 13, 2004, the Sinhas obtained a state court judgment against Mr. Clark. The judgment was for $20,000 for sums paid to Mr. Clark by the Sinhas, $73,772.59 for the amounts the Sinhas paid to correct and complete the remodeling project, and $93,300 for other compensatory and economic damages. The judgment was obtained by default.

The Sinhas seek to have all of the components of the state court judgment obtained against Mr. Clark determined to be non-dischargeable. The Sinhas have plead in their adversary complaint that the amounts owed to them by Mr. Clark are non-dischargeable pursuant to Bankruptcy Code Sections 523(a)(2)[1] and 523(a)(6).

---

[1] The Sinhas did not specify in their Complaint whether they were alleging that Section 523(a)(2)(A) or Section 523(a)(2)(B) applied to the facts in this case. At the trial, the Sinhas'

A creditor seeking to establish an exception to the discharge of a debt bears the burden of proof. Matter of Scarlata, 979 F.2d 521 (7th Cir. 1992). A creditor must meet this burden by a preponderance of the evidence. Grogan v. Garner, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to discharge are construed strictly against the creditor and liberally in favor of the debtor in order to effectuate the debtor's fresh start. Meyer v. Rigdon, 36 F.3d 1375 (7th Cir. 1994).

Section 523(a)(2)(A) of the Bankruptcy Code states in part as follows:

> A discharge under section 727... of this title does not discharge an individual debtor from any debt... for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained, by - false pretenses, a false representation, or actual fraud....

11 U.S.C. § 523(a)(2)(A).

In order to prove their case under this provision, the Sinhas must establish that (1) Mr. Clark made false statements which he knew to be false, or which were made with such reckless disregard for the truth as to constitute willful misrepresentations; (2) Mr. Clark possessed the requisite *scienter*, i.e., he actually intended to deceive the Sinhas, and (3) to their detriment, the Sinhas

---

counsel suggested that he was proceeding under both subsections. The Sinhas did not, however, present any evidence at trial that Mr. Clark had presented them with any written statement concerning his financial condition. No cases were cited relying on Section 523(a)(2)(B). Accordingly, the Court's analysis will be limited to Section 523(a)(2)(A).

justifiably relied on the representations. <u>Field v. Mans</u>, 116 S.Ct. 437, 446 (1995); <u>In re Mayer</u>, 51 F.3d 670, 673 (7th Cir. 1995), *cert. denied* 116 S.Ct. 563 (1995); <u>In re Sheridan</u>, 57 F.3d 627, 635 (7th Cir. 1995); <u>In re Scarlata</u>, 979 F.2d 521, 525 (7th Cir. 1992); <u>In re Buhl</u>, 1997 WL 33479043 *at* \*3 (Bankr. C.D. Ill. Nov. 12, 1997). To establish the non-dischargeability of a debt pursuant to Section 523(a)(2)(A), the Sinhas must prove more than just a breach of contract or a failure of Mr. Clark to fulfill promises of future performance. <u>In re Barr</u>, 194 B.R. 1009, 1017-18 (Bankr. N.D. Ill. 1996).

Section 523(a)(6) of the Bankruptcy Code states in part as follows:

> A discharge under section 727... of this title does not discharge an individual debtor from any debt... for willful and malicious injury by the debtor to another entity....

In order to be entitled to a determination of non-dischargeability under Section 523(a)(6), the Sinhas must prove three elements by a preponderance of the evidence: (1) that Mr. Clark caused an injury; (2) that Mr. Clark's actions were willful, and (3) that Mr. Clark's actions were malicious. <u>In re Carlson</u>, 224 B.R. 659, 662 (Bankr. N.D. Ill. 1998) (citation omitted), *aff'd* 2000 WL 226706 (Bankr. N.D. Ill. 1998), *aff'd* 2001 WL 1313652 (7th Cir. 2001). "Willful" means intent to cause injury, not merely the commission of an intentional act that leads to injury. <u>Kawaauhau v. Geiger</u>, 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

-6-

Under Geiger, to prove non-dischargeability of a debt under §523(a)(6), a plaintiff must show that the defendant actually intended to harm him and not merely that the defendant acted intentionally and he was thus harmed. Id. *at* 61-62. The defendant must have intended the consequences of his act. Id. Injuries either negligently or recklessly inflicted to not come within the scope of §523(a)(6). Id. *at* 64. An intentional breach of contract which is substantially certain to cause injury may give rise to a finding of non-dischargeability under §523(a)(6). In re Williams, 337 F.3d 504, 510 (5th Cir. 2003).

The Supreme Court did not define the scope of the term "intent" utilized to describe willful conduct. Subsequent decisions, however, have required either a showing of subjective intent to injure the creditor or a showing of a debtor's subjective knowledge that injury is substantially certain to result from his acts to establish the intent required in Geiger. *See* In re Markowitz, 190 F.3d 455 (6th Cir. 1999); In re Cox, 243 B.R. 713, 719 (Bankr. N.D. Ill. 2000); In re Budig, 240 B.R. 397 (D. Kan. 1999); In re Kidd, 219 B.R. 278 (Bankr. D. Mont. 1998).

To prove malice, a creditor must show that the debtor's willful, injurious conduct was undertaken without just cause or excuse. In re Slosberg, 225 B.R. 9, 21 (Bankr. D. Me. 1998). *See also* In re Thirtyacre, 36 F.3d 697, 700 (7th Cir. 1994) ("Malicious" means "in conscious disregard of one's duties or without just cause

or excuse".)

The debt of Mr. Clark to the Sinhas in the amount of $20,000, representing the amounts paid by the Sinhas to Mr. Clark should be held non-dischargeable pursuant to Section 523(a)(2)(A). The Sinhas have met their burden of proof on each required element. Mr. Clark made false statements to the Sinhas which Mr. Clark knew were false. Mr. Clark knew he was not licensed and not insured. Mr. Clark knew that he had not and was not going to order custom materials for the Sinha remodel. Mr. Clark intended to deceive the Sinhas and wanted the Sinhas to rely upon his misrepresentations. The Sinhas had no reason to initially question the authenticity of his certificate of insurance or to question whether Mr. Clark was actually ordering materials for the job. When the Sinhas became suspicious later, they made proper inquiries to find the truth, whereupon they terminated the contract with Mr. Clark, thereby mitigating their losses. The $20,000 which Mr. Clark obtained from the Sinhas was obtained by fraud and misrepresentation and should, therefore, be excepted from discharge.

The debt of Mr. Clark to the Sinhas in the amount of $14,597.59, representing the additional costs to the Sinhas for the remodeling project to correct the problems caused by Mr. Clark should be held to be non-dischargeable pursuant to Section 523(a)(2)(A) and 523(a)(6).

The debt should be held non-dischargeable under Section

523(a)(2)(A).  Some courts have held that sums non-dischargeable under this subsection are limited to amounts actually "obtained" by a debt due to his fraud or misrepresentation.  *See, e.g.* In re Rubenstein, 101 B.R. 769, 772 (Bankr M.D. Fla. 1989) (debtor must have either received money, property or services or, at the very least, derived an actual benefit for himself).  The U.S. Supreme Court has, however, provided a more expansive view of the type of debt which may be held non-dischargeable under this subsection.  In Cohen v. de la Cruz, 523 U.S. 213, 118 S.Ct. 1212, 140 L.Ed.2d 341 (1998), the Court found that all liability arising from the fraud is non-dischargeable under this subsection.  The Court refused to limit the discharge exception to only the amounts actually received by the debtor.  Id. *at* 1219.  The $14,597.59 was not "obtained" by Mr. Clark, but the debt arose directly from his fraudulent conduct and misrepresentations and, therefore, should not be discharged.

The debt should be held non-dischargeable under Section 523(a)(6).  All of the evidence presented suggests that Mr. Clark knew his conduct would damage the Sinhas' home.  Accordingly, the only conclusion which can be drawn in the absence of any evidence to the contrary is that Mr. Clark intended not only his acts, but also the consequences of those acts.  The debt for $14,597.59 arose as a result of Mr. Clark's intention injury to the Sinhas' home and should not be discharged.

The remaining obligations of Mr. Clark to the Sinhas do not

fall within any exception to discharge and should be discharged.

In its aforementioned judgment in favor of the Sinhas and against Mr. Clark, the state court awarded $73,772.59, which represented the entire cost of correcting defects and completing the remodeling job. The portion of that judgment which represented the extra costs - $14,597.59 - has been determined to be non-dischargeable. The balance of $59,175 represents the original agreed-upon cost of the remodeling project. It is unclear upon what basis the state court awarded judgment for that amount to the Sinhas. There is no basis to except that amount from discharge, so it will be discharged.

The state court awarded the Sinhas an additional $93,300 for what were described as other compensatory and economic damages. It is unclear what is included in this amount and no itemization of any specific losses was presented at the hearing. Mention was made that one of the Sinhas delayed retirement due to the increased costs of the remodeling, but, presumably, that Plaintiff continued to be paid for the additional period worked, and it is otherwise unclear how this would constitute an element of damage. Due to the lack of proof that these damages fall within any exception to discharge, they will not be excepted and will be discharged.

For the foregoing reasons, the Court finds that the sum of $20,000 is non-dischargeable pursuant to Section 523(a)(2)(A) of the Bankruptcy Code, and the sum of $14,597.59 is non-dischargeable

pursuant to Section 523(a)(2)(A) and 523(a)(6) of the Bankruptcy Code.  The remaining portion of the civil judgment is discharged.

This Opinion is to serve as Findings of Fact and Conclusions of Law pursuant to Rule 7052 of the Rules of Bankruptcy Procedure.

See written Order.

###

-1-